CASE 24—SUITS BY THE UNITED STATES FIDELITY & GUARANTEE COMPANY AND THE AMERICAN SURETY COMPANY OF NEW YORK AGAINST F. P. JAMES, AUDITOR, AND OTHERS, TO ENJOIN THE ENFORCEMENT OF A FRANCHISE TAX.—March 24, 1909.

133   299
f133  318

# James Auditor, &c. v. United States Fidelity & Guaranty Co.

Appeal from Franklin Circuit Court.

R. L. STOUT, Circuit Judge.

Judgment for plaintiffs, defendants appeal.—Affirmed.

1. Taxation—Assessment—Levy—Power of Legislature.—The power to fix the rate of taxation is in the General Assembly, and it must fix a well defined rule as a guide to the ministerial officers throughout the State who have to carry it into effect.

2. Taxation—Nature of Power—Delegation of Power.—The power of the Legislature to determine the method to be employed in arriving at the taxable value of property cannot be delegated.

3. Statutes—Construction—General Rules of Construction.— Where the words used in a statute are plain, clear and unambiguous and the language expresses the legislative intent, there is no room for construction, and the statute must be accepted and enforced as it is written.

4. Statutes—Construction—General Rules of Construction.—A statute which does not clearly express the legislative intent because of its wording or the use of particular words will be construed so as to make it, if possible, express the true legislative intent.

5. Statutes—Construction—General Rules of Construction.— Where words used in a statute do not convey the meaning intended by the Legislature, and from the context, the attendant circumstances, and the object to be accomplished, the intent is made apparent, the words may be modified, altered, or supplied to express the legislative intent.

6. Statutes—Construction—General Rules of Construction— "Or."—The word "and" may be substituted for the word "or" when necessary to make a statute express the true legislative intent as gathered from the context and the circumstances attending its enactment.

James, Auditor, &c. v. U. S. Fidelity & Guaranty Co.

7. Taxation—Taxing Power—Delegation of Power—"Or."—Ky. St. 1909, Section 4080 (Russell's St. Section 6053), which authorized the assessing board to consider the gross earnings of a foreign corporation in the state in fixing the value of its franchise, was amended to meet the objectionable feature that the board could not ·consider the net income in the State in fixing the valuation, the amended act being Ky. St. 1909, Section 4080, which provides that: "If the corporation * * * be organized under the laws of any other State or governmen', except as provided in the next section, the board shall fix the capital stock in this state by capitalizing the net income derived in this State, 'or' it shall fix the capital stock as hereinbefore provided, and will determine from the amount of the gross receipts of said corporation * * * in this State and elsewhere, the proportion which the gross receipts of this State * * . * bears to the entire gross receipts of the company, the same proportion of the value of the entire capital stock 'or' the capitalizing of the net earnings in this State, less the assessed value of the tangible property assessed, * * * shall be the correct value of the corporate franchise of such corporation * * * for taxation in this State." Held, that the evident intent of the Legislature in amending the law was not to provide the board with an alternative means of arriving at the value of a franchise, but to require the board to consider the two items of gross earnings and net income of the corporation in this State in fixing the valuation, and to effectuate this intent the word "or" as used in the amended act, should be read "and," and, when so construed, the act is not unconstitutional as a delegation of the taxing power. .

8. Taxation — Assessment — Corporate Property — Valuation of Franchises.—In fixing the valuation of the franchise of a foreign corporation under Ky. St. 1909, Section 4080 (Russell's St. Section 6053), the assessing board should consider the two items of gross earnings and net income of the corporation in the State as required by the statute.

JAMES BREATHITT, Attorney General, and JOHN F. LOCKETT, Assistant Attorney General, for appellants.

(See next case, No. 25.)

CONCLUSION.

The purpose of counsel for appellant in preparing this brief has been to show that the allegations in neither of the several petitions herein are sufficient to constitute a cause of action, for the following reasons:

1. Because the franchise of each was assessed by the authority authorized to assess it by the Legislature.

2. Because the Legislature had the right to provide by whom, and the method by which, it should be assessed.

3. That the board assessed it by a method prescribed in the act, under which the petitions admit it was assessable.

James, Auditor, &c. v. U. 'S. Fidelity & Guaranty Co.

4. That the assessment was made by capitalizing the net earnings as shown in the reports of each of the corporations, and
5. Having acted in pursuance of the statute enacted with full power in the General Assembly to enact it, upon the report as made by the several appellees, in the absence of a charge of fraud or mistake on the part of the board, no relief can be had because no wrong has been done.

## POINTS AND AUTHORITIES.

Kentucky Statutes, Sections 4080-4081; Acts 1906, Article 4, Subdivisions 1-4 and 5; Hager v. American Surety Company, 121 Ky., 791; Paul v. Virginia, 8th, Wall. 360; Phoenix Ins. Co. v. Welch, 29 Kan., 672; Talbot Ins. Co. v. Fidelity & Casualty Co., 74 Md., 536; Phillips v. Fidelity & Casualty Co., 77 Iowa, 649; Germania Insurance Co. v. Swigert, 128 Ill., 237; Cooley on Taxation, 2d Ed., 23-57; J. B. Green in L. R. A.; Western Union Tel. Co. v. Lieb, 76 Ill., 172; Dryden v. Grand Trunk R. R. Co., 60 Me., 518; McNaughton v. McGuire, 49 Pac., 651; Maine v. Grand Trunk Ry. Co., 142 U. S., 217; Home Insurance Co. v. New York, 134 U. S., 154.

Is the assessment unequal or unjust?—Louisville Ry Co. v. Commonwealth, 20 K. L. R., 1509; Commonwealth v. Cov. & Cin. Bridge Co., 24 K. L. R., 1177; Gulf, Colorado & Santa Fe Ry. Co. v. Ellis, 165 U. S., 150; Magoun v. Ill. Trust & Savings Bank Co., 170 U. S., 1042; Booth's Executor v. Commonwealth ex. rel. (Oct. 28, 1908); Maine v. Grand Trunk R. R. Co., 142 U. S., 217; James, Auditor v. Kentucky Refining Co. (Nov. 17, 1908); Levi, &c. v. City of Louisville, 97 Ky., 394; Kentucky Railroad Cases, 115 U. S., 418; Kentucky Constitution, Sec'ions 171-172 and 174.

The Fourteenth Amendment to U. S. Constitution.—Kentucky Railroad Cases, 115 U. S., 418; Strater Brothers Tobacco Co. v. Commonwealth, 117 Ky., 604; Brown-Foreman Co. v. Commonwealth, 30 K. L. R., 796.

Injunction erroneously granted.—Thompson v. City of Lexington, 20 K. L. R. 457; Alberquerque Nat. Bank v. Pa., 147, U. S., 92; City of Covington v. Shinkle, 25 K. L. R., 72; Cummins v. National Bank of Toledo, 101 U. S., 904.

LINDSAY & EDELEN, for appellees.

BODLEY & BASKIN, of counsel.

1. Section 4 of Subdivision 1 of Article 4 of the Revenue Act of 1906 is unconstitutional, because it violates the provisions of the State Constitution requiring uniformity of taxation and forbidding a delegation of legislative power. (Louisville & Jeffersonville Ferry Co. v. Commonwealth, 108 Ky., 717; Henderson Bridge Co. v. Commonwealth, 99 Ky., 623; Louisville Tobacco Warehouse Co. v. Commonwealth, 106 Ky., 165; Standard Oil Co. v. Commonwealth, 119 Ky., 75).
2. It is a violation of the Fourteenth Amendment of the Constitution of the United States in that it takes from the appellee its property without due or any process of law.

OPINION OF THE COURT BY JUDGE LASSING —Affirmed.

These suits involve a common question, and are considered together. Prior to 1906 the franchises and guaranty companies, were assessed as provided in Section 4080 of the Kentucky Statutes (Russell's St. Sec. 6053). This court in Hager, Auditor v. American Surety Company, 121 Ky. 791, 90 S. W. 550, held that the board of valuation and assessment was without authority to adopt any other method of arriving at the value of a franchise of such a company than that provided by statute. The litigation in Hager, Auditor v. American Surety Company, grew out of an effort on the part of the assessing board to use the net income of such companies as the basis of fixing the values of their franchises. It was the contention of the board that, by capitalizing the net income in Kentucky of such companies at 6 per cent., a fair and equitable value of their franchises could be had, but that, by following the plan as laid down by Section 4080, the valuations were too low. At the time this contention of the board of valuation and assessment was decided against the State the Legislature was in session, and it at once amended Section 4080 so as to meet the objectionable features thereof, as pointed out in the opinion to which we have referred. This amended act is now section 4080 of the Kentucky Statutes of 1909, and is as follows: "If the corporation, company or association be organized under the laws of any other State or government, except as provided in the next section, the board shall fix the capital stock in this State by capitalizing the net income derived in this State, or it shall fix the capital stock as hereinbefore

provided, and will determine from the amount of the gross receipts of said corporation, company or association in this State and elsewhere, the proportion which the gross receipts of this State, within twelve months next before the thirtieth day of June of the year in which the assessments were made, bears to the entire gross receipts of the company, the same proportion of the value of the entire capital stock or the capitalizing of the net earnings in this State, less the assessed value of the tangible property assessed, or liable to assessment in this State, shall be the correct value of the corporate franchise of such corporation, company or association for taxation in this State.'' When the said board proceeded to assess appellees under this statute, appellees enjoined it from doing so on the ground that the Legislature had undertaken to delegate to the assessing board a discretion as to the method which it should use in fixing the value of their franchises, and this attempted delegation of power rendered the statute inoperative and void, and, for this reason, the board was without authority to proceed under said statute, and had no right to adopt either plan provided for in said statute in ascertaining the value of their franchise. Appellee American Surety Company contends that, as the statute under consideration is void, it should be assessed under the old act or law as it was before its amendment in 1906. Appellee United States Fidelity & Guarantee Company contends that as the old law was repealed, and the present act is void, the board is without authority to assess its franchise at all. Each pleaded that the board had adopted the capitalization of its net income or profits in Kentucky as the basis of fixing the valuation on its franchise,

and that the valuations arrived at under this method were much higher than they would be if the other method were adopted, and, in fact, much higher than they should be. The trial judge was of the opinion that the act was unconstitutional and void, and so held. With this finding and judgment the Commonwealth is dissatisfied, and appeals.

In each of these appeals the constitutionality of section 4080 of the Kentucky Statutes, Compilation of 1909, is assailed. The ground upon which it is attacked is that it provides alternative methods by which the board of valuation and assessment may fix the valuation of the franchises of corporations of the character described in the act. If we must accept the statute literally as written, then this contention is correct, for the taxing power has been confided by the people to the legislative department of government, the General Assembly; and this body alone has the right to exercise a judgment or discretion as to the method that shall be employed in arriving at the valuation of the property sought to be taxed. While it has ample authority to determine how the property shall be taxed—that is, the method that shall be employed in arriving at its fair taxable value—yet it is without authority of law to delegate this power, and any attempt on the part of the General Assembly to delegate this power to the board of valuation and assessment is ultra vires and void. There is no rule of law better settled than that the power to fix the rate of taxation is in the General Assembly, and it must fix a well defined rule to serve as a guide to the ministerial officers throughout the State who have to carry it into effect. It is equally well settled that this power can not be delegated to a board or any

subordinate body, or even to a court, but it alone can exercise it.   Cooley  on  Constitutional  Limitations, p. 163; 1 Sutherland on  Statutory Construction, p. 145; Owensboro. & Nashville  Railroad  Company v. Todd, Trustee, 91 Ky. 175, 15 S. W. 56, 11 R. A. 285; Jernigan y. City of Madisonville, etc., 102 Ky. 313, 43 S. W. 448.  There is no exception to this rule. The fact that the General Assembly has the power to au- thorize municipal corporations, through their legisla- tive boards, to fix assessments; and levy and collect taxes for municipal  purposes,  does  not  militate against the rule, for the reason that such power is ex- pressly provided for by section 181 of the Constitu- tion.   The General Assembly alone has the right to levy taxes for State purposes, and is expressly for- bidden to impose taxes for county, city, town or dis- trict purposes; but is required to confer upon the local authorities of such county, city, town or district the power to levy and assess all taxes for local or municipal purposes.   This constitutional provision, instead of being an exception to the rule, is an exem- plification of it, and illustrative of  the  democratic idea of local self-government which is one of the per- fections of our republican form of government.   The acts of the General Assembly are but the expressions of the legislative intent upon the various subjects with which they deal.   Where the words used are plain, clear and unambiguous, and the language of the act expresses the legislative intent, there is no room for construction, and the act must be accepted and enforced as it is written.   Cases frequently arise, however, where, from the wording of the act, or the arrangement of the words or phrases therein, or the use of some particular word or words in the act, the

legislative intent is not clearly expressed, if expressed at all, and in such cases it becomes necessary to construe the act so as to make it, where this may be done, express the true legislative intent. As said by Sutherland in his work on Statutory Construction, the intent is the law; the statute is but expressive of that intent.

Adopting this idea in passing upon the validity of the act under consideration, it is first necessary to determine the purpose the Legislature had in its passage. As heretofore stated, the amendment to Section 4080 was brought about by the discovery on the part of the board of valuation and assessment that the old statute provided no adequate means for arriving at the true value of the franchises of those corporations for whose assessment it provided; the statute to which we have referred being that which required that the board of valuation and assessment should take into consideration the gross earnings of the corporation in this State, and fix the value of the franchise at that proportion of its entire capital stock, surplus and undivided profits which its gross business in Kentucky bore to its gross business everywhere. To correct this evil the statute was amended. Since the old method had been found inadequate and unsatisfactory no good reason can be assigned why it should have been continued in force. It would have been a waste of time to have done so if it was the purpose of the Legislature that it should still constitute a complete plan in itself for fixing the value of the corporate franchise; hence we must conclude that the Legislature, in retaining this language in the amended statute, purpose that it should still be used in determining the value of the franchises of

the corporations described in that section, necessarily not alone, but in connection with the remainder of the section, to wit, that portion thereof which provides that the board might take into consideration the net income of the corporation as well. If this was the purpose of the Legislature, then the section presents a perfect and complete system or plan for assessing franchises of the corporations with which it deals. We are confronted then with the question: Did the Legislature, in amending this act, intend to continue the old method of ascertaining the value of such franchises in force, and, in addition, provide another method and give to the board the right to adopt either of said methods that the exigencies of the case might require, or was it the aim of the Legislature in amending the law to create one perfect plan or system by which the valuation of the franchises could be determined? It may be fairly presumed that, if the board had the right to exercise such discretion, it would exercise that discretion always in favor of the Commonwealth, and would adopt that plan in each particular case which would produce the greatest amount of revenue; whereas, if the company sought to be assessed were given a voice in the matter, it would insist upon the application of that plan which would place upon it the least burden in the shape of taxation. When it is remembered that in the General Assembly there were a great many lawyers, and that the special commission which had in charge the preparation of the revenue and taxation laws included among its members some of the best legal talent in the State, it is altogether unreasonable to presume that they would, in attempting to cure a defect in the law, have adopted an amendment

thereto so repugnant in form as to carry with it its own destruction.

Again, when it is remembered that the taxation of franchises at all in this State is of comparatively recent date, and that the Legislature has, from time to time, been called upon to amend the laws relative thereto so as that the franchises of such corporations as are chargeable with the franchise tax may be assessed at their fair and reasonable value, it is very apparent that the legislative intent all along has been to arrive at some plan which would enable the board of valuation and assessment to place upon the franchises of corporations subject to a franchise tax such a valuation as would make them bear their just proportion of the public burden. In no other section of this comprehensive act regulating assessment and taxation is a dual method for arriving at values provided for. The evident purpose of the Legislature in the amendment of the act under consideration was not to provide the board with an alternative means of arriving at the value of the franchises under consideration, but to provide the board with an additional means of evidence to serve as a guide in reaching a just and fair conclusion as to the proper value of the franchise, and therefore the word "or," as used in the act, was evidently intended to be "and." We are constrained to believe that the true purpose and intent of the Legislature was to have the board in fixing the value of the franchises take into consideration the gross earnings of the corporation in this State and its net income as well, and from a consideration of these two items fix the value of the corporate franchise, as in the remainder of the act provided. Now, if the word "and" is substituted for the word

"or," the aim of the Legislature, as expressed in the various acts amending the law bearing upon this subject, is carried out, and the board, by being empowered to consider additional evidence as to value, is enabled more nearly to fix the true value of the franchises of those corporations. Bearing in mind always that the sole purpose for which this legislation was enacted was to devise a plan that would enable the board to fix a fair, just and reasonable valuation upon the franchise of the company, we must conclude that the Legislature intended not to provide an alternative method for arriving at this valuation, but simply to provide the board with additional evidence, as it were, showing value, and, when this construction is placed upon the act, its objectionable features are removed, and it is made to present one entire harmonious plan for ariving at the valuation for assessment of franchises of corporations of that class therein described, and thereby carry into effect the evident legislative intent. This brings us, then, to the question as to whether or not the word "and" may be substituted for the word "or."

The object sought to be attained by the enactment of this statute being clearly ascertained, it furnishes a most excellent aid in determining whether or not the words used convey the meaning which the Legislature intended they should. Where they do not, and from the context, the attendant circumstances, and the object sought to be accomplished this fact is made to appear then the words may be modified, altered or supplied so as to keep the act from being inconsistent with the legislative intent. In dealing with this subject, Mr. Endlich, in his work on Interpretation of Statutes (page 400, Section 295), says:

''Where the language of a statute, in its ordinary meaning and grammatical construction, leads to a manifest contradiction of the apparent purpose of the enactment, or to some inconvenience or absurdity, hardship or injustice presumably not intended, a construction may be put upon it which modifies the meaning of the words and even the structure of the sentence. This is done sometimes by giving an unusual meaning to particular words, sometimes by altering their collocation, or by rejecting them altogether, or by interpolating other words, under the influence, no doubt, of an irresistible conviction that the Legislature could not possibly have intended what its words signify, and that the modifications thus made are mere corrections of careless language, and really give true intention.'' This court, in the case of Commonwealth v. Grinstead, etc., 108 Ky. 59, 55 S. W. 720, 57 S. W. 471, 22 R. 377, in construing Section 3917 of the Kentucky Statutes (Russell's St. Sec. 3719), held that, in order to effectuate the legislative intent and preserve the statute, the word ''person,'' as used in the first part of the section, was superfluous, a mere inaccuracy in the drafting of the statute, and in that opinion this word was left out of consideration. Again in the case of Sams v. Sams' Administrator, 85 Ky. 400, 3 S.W. 594, 9 R. 24, this court, speaking through Judge Pryor, said: ''It is a well settled rule of construction that the letter of a statute will not be followed when it leads to an absurd conclusion; but, on the contrary, the reason for the enactment must enter into its interpretation, so as to determine what was intended to be accomplished by it''—and in that opinion this court read into the statute the

word "unmarried," so as to make it express the true
legislative intent.  Where the statute used the word
"man," it was construed by this court to mean "un-
married man," although the word "unmarried" was
omitted from the statute.  And in the case of Bird,
etc. v. Board of Commissioners of Kenton County,
95 Ky. 195, 24 S. W. 118, 15 R. 578, this court substi-
tuted the word "depth" for the word "width" in or-
der to meet the apparent legislative intent: Instances
of this character might be multiplied almost without
number by reference to the decisions of courts of last
resort of other States.  However, as we deem the de-
cisions of our own court conclusive upon this point,
we will refer to but one such,-the case of Greiger v.
Kobilka, 26 Wash. 171, 66 Pac 432, 90 Am. St.
Rep. 733, which is directly in point.  In construing
certain exemption statutes and harmonizing the va-
rious provisions thereof, the Supreme Court of Wash-
ington said: "The word 'and' is often used inter-
changeably with 'or,' the meaning being determined
by the context"—and then quoted with approval the
following extract from Sutherland: "Sec. 397: The
popular use of 'or' and 'and' is so loose and so fre-
quently inaccurate that it has infected statutory en-
actments.  While they are not treated as interchange-
able, and should be followed when their accurate read-
ing does not render the sense dubious, their strict
meaning is more readily departed from than that of
other words, and one read in place of another in
deference to the meaning of the context."  In that
case the language of the statute "for the support of
himself and family" was construed to read "for the
support of himself or family" in order to carry out
the evident legislative intent as gathered from other
sections of the exemption statutes.

Being satisfied that the Legislature, in the amendment of this statute, intended that the board should take into consideration the two items of gross earnings and net income of the corporation in this State in fixing the valuation of its franchise, the word "or," as used in this statute, should be read "and." The authority authorizing this substitution, where it becomes necessary in order to effectuate the legislative intent, is so clearly established by the decisions of this and other State courts, as well, that further comment is deemed unnecessary. The board having attempted to fix the valuation of the franchise of appellees by taking into consideration only part of the evidence which it was required to receive, the trial court properly enjoined the enforcement of the collection of the taxes estimated upon such a valuation. Upon the return of these cases the board will fix the valuation of the franchise of each company by taking into consideration the gross earnings of the company in this State, and its net income, as well, and from a consideration of both of these items fix upon its franchise its fair taxable value, as in Section 4080 provided.

Judgment in each case affirmed.