## Commonwealth v. Bartholomew.

(Decided Oct. 23, 1936.)

704

B. M. VINCENT, Attorney General, A. E. FUNK, Assistant Attorney General, and MERIT O'NEAL, Commonwealth's Attorney, LAWRENCE GRAUMAN, County Attorney, and STUART E. LAMPE, Assistant County Attorney, for appellant.

WILLIAM S. HEIDENBERG for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The regular 1932 session of our Legislature enacted chapter 147, page 678, of the session acts of that year, and which is now sections 1083a-1, to and including 1083a-16, in Baldwin's Revision of Carroll's Kentucky Statutes, 1936 Edition. The act applied exclusively to courts of justices of the peace and constibles and to the positions of deputy constables in counties in this commonwealth containing a population in excess of 250,000, which made it applicable only to the county of Jefferson, including the city of Louisville, Ky. The

validity of the statute was attacked as being unconstitutional in the case of Shaw v. Fox, 246 Ky. 342, 55 S. W. (2d) 11; but we therein sustained it in all of its parts. It prescribed for only three magisterial districts in such counties, and that justices of the peace should receive as an annual salary, or compensation, the sum of $4,000, payable monthly in the manner set out (section 1083a-3), and that constables should be paid an annual salary or compensation of $2,400, payable in monthly sums of $200, and deputy constables should receive $1,500 per anum, payable in monthly amounts of $125. Section 1083a-9. Section 1083a-2 prescribes that "all moneys" received or collected as compensation or fees for official duties of justices of the peace, constables, and deputy constables shall be collected by them, and when accounted for in the manner directed such collections shall become "a part of the general fund of the county" from which all of such officers or agents are to receive their monthly compensations. But section 1083a-9, in dealing exclusively with constables and deputy constables (and wherein their salaries are fixed and the modes of paying thereof are prescribed), contains this proviso: "Provided, however, that in no event shall the amount paid to any constable or deputy constable for any month exceed the amount paid into the general fund of said county by the said constable or deputy constable, pursuant to section [2] * * * hereof, during the preceding month." It is the correct interpretation of that proviso, taken in connection with all parts of the act and the purpose for its enactment, that is involved in this prosecution.

A. J. Bartholomew was and is the only elected and qualified constable for one of the magisterial districts of Jefferson county. For some of the months preceding his indictment he did not personally earn as fees for service of process in his district the full amount of his monthly salary ($200), and with his consent one or more of his two deputies made return on processes executed by them by signing the name of Bartholomew only to the return made thereon, thus making it appear that the execution thereof had been performed by the constable in person, and not by the deputy, who actually performed the services, but in the name of his principal. In reporting at the end of each day to the recorder for the magisterial district (each of which is also provided for in other sections of the act), it thereby appeared,

that Bartholomew, as constable of the district, had earned the fees allowed by law for the services so actually performed by one of his deputies, and the recorder so reported it to the fiscal court of the county and delivered his check therefor, which went into the general fund of the county—which was in conformity with the directions contained in section 1083a-7 of the statutes.

The commonwealth, through its proper officers, conceived the idea that the above-inserted proviso from section 9 of the act, and now section 1083a-9 of the Statutes, limited the monthly payments to the constable and to each of his deputies individually to the amount of fees each of them had personally earned during the immediately preceding month, and that if any of them had not earned enough to entitle him to his monthly salary, then no more than what he had earned should be paid him for that month; and that it was not permissible for the deficit to be made up of excess fees that any of the others may have earned in the discharge of the duties of the office of constable. In other words it was and is the contention of the commonwealth that the monthly stipends must be personally earned by the constable, and each of his deputies, and that if not done the one who has failed in that respect must sustain the loss. So construing the statute, the constable (defendant below and appellee here) was indicted by the Jefferson county grand jury, in which he was accused of malfeasance in office, consisting in his procuring or consenting for his deputies to return processes as executed by him (defendant) personally and, therefore, entitling him to the fees therefor, when in truth the services had been performed by the deputy, but, of course, in the name of his principal. At the close of the evidence the learned trial judge sustained defendant's motion for a peremptory acquittal followed by a verdict finding him not guilty, and the commonwealth, questioning the correctness of the court's ruling, prosecutes this appeal for a certification of the law if we should sustain the commonwealth's interpretation of the statute, but if not, then the judgment of acquittal should be affirmed.

Various questions are argued by counsel for both sides on this appeal, which they insist sustain their respective contention as to the correct interpretation of the act, and counsel for defendant also contend that if

section 1083a-9, relating exclusively to the office of constable, was intended to confine the monthly payment to that officer, and his deputies, to the amount of fees earned by them during the previous month, then it is unconstitutional as well as self-contradictory, and for which reason the entire proviso should be eliminated. But we cannot accept that contention, since it is too clear to admit of argument that it was the intention of the Legislature to limit the monthly compensation of constables and deputy constables to the annual salary (payable monthly) they each should receive under the provisions of the act, provided enough had been earned by all in the aggregate during the preceding month to meet such monthly payments. We have been cited to no provision in our Constitution forbidding the enactment of such requirements, nor have we been cited to any case upholding that position. We must therefore decline to sustain it and to determine the contested issues upon the theory that it is competent for the Legislature to so provide—and which narrows the question to the single one of what was meant by the above-inserted proviso to section 1083a-9 of the Statutes, supra?

It is a universal rule, requiring the citation of no supporting text or opinions, that in construing statutes the intention and purpose of the Legislature in enacting them should first be ascertained by the court, and the statute construed or interpreted so as to carry out that general purpose, unless to do so would require a complete ignoring of some other clear and positive provision in conflict with such general intention and purpose. That general statement of the rule is so universally established and followed as that the citation of authorities therefor would be superfluous. Starting out with that rule in mind, it is clear (and it was so declared in the Fox Case) that it was the intention of the Legislature in enacting the statute, not only to limit the compensation of justices of the peace, constables, and deputy constables in the counties to which the act applied, but also to confine the monthly payments of constables and deputy constables to the earnings of that office during the preceding month for which they receive payment, and that the overplus of such earnings, as well as all earnings of the justices of the peace over and above their salaries, should go into the general fund of the county treasury. The evil intended to be remedied by the enactment of the statute (as was pointed out in the

Fox Case, supra) was, first to limit the compensation of the incumbents of the offices involved to a sum that would not exceed the constitutional limitation of $5,000, since the aggregate amount of fees earned prior to the enactment of the statute had amounted to a sum far exceeding that limitation. Under the law as it then stood, the officers involved were stimulated to inaugurate and conduct unnecessary and frequently bogus suits in order to swell the amount of compensation under the fee system then prevailing, and which also resulted in annoyance to, as well as burdensome costs upon, defendants in such petty litigations. It was therefore concluded that something should be done to remedy the unwholesome situation in such communities, and to erect barriers against it.

It is insisted by the commonwealth that the proviso in section 1083a-9, relating to constables and deputy constables, is so framed as to compel the interpretation that a constable should receive his monthly salary only from fees *he* earned, and that deputies should be paid in like manner, and that the phraseology thereof is so positive as to exclude the interpretation that the compensation of the chief constable *and* that of his deputies should be paid from the aggregate fees earned by that office, through the combined efforts of all of them, which latter is defendant's contention. To begin with, the interpretation of the commonwealth would entail absurd consequences, and would also not enhance the plain purpose and intention of the Legislature supra in enacting the statute. Under the provisions of section 425 of our Statutes, a constable may appoint one or more deputies, provided the county judge of the county consents thereto. It is, furthermore, provided therein that "the constable and his surety shall be liable on his bond for all the acts and omissions of his deputies." Pursuant to other statutes, the constable may, and most generally does, require a bond from his appointed deputy indemnifying the constable against any damage or loss that he might sustain because of defalcations of his deputy. It is therefore seen that the constable is the one primarily liable for the acts and doings of all his deputies; and which clearly indicates that it was the *office* of constable that the Legislature intended to regulate by the enactment of the statute, including the paying of salaries for himself and deputies, and the amount of each monthly payment thereof.

There is no such known agent (or officer, if you please) as "deputy justice of the peace," and therefore no provision was made for any such deputy position; but since the Legislature had provided for deputy constables—the services of whom are everywhere recognized as necessary—the involved statute here expressly regulates them. The clear purpose was to prescribe that the fees from that office should defray its monthly expenses, including compensation for the principal officer and also that of his necessary deputies. However, if, upon the due date of any monthly payment, enough to meet the monthly salaries had not been earned by the office for the preceding month, then the fees of those entitled to participate therein should be correspondingly scaled, and that any deficit therein *could not* be supplied from overplus earnings for any other month of the year. We think the language of the proviso, *as written,* is susceptible to that interpretation. However, if it were otherwise—and the literal language employed created a doubt concerning the meaning—we would then be authorized, under another rule of interpretation, to reform its language in a manner to conform to what we have concluded was the *evident* purpose and intention of the Legislature. That rule—of frequent and universal application by courts—is thus stated by Mr. Englich in his Work on Interpretation of Statutes, sec. 295: "Where the language of a statute, in its ordinary meaning and grammatical construction, leads to a manifest contradiction of the apparent purpose of the enactment, or to some inconvenience, or absurdity, hardship or injustice, presumably not intended, a construction may be put upon it, which modifies the meaning of the words, and even the structure of the sentence. This is done, sometimes, by giving an unusual meaning to particular words; sometimes by altering their collocation; or by rejecting them altogether; or by interpolating other words; under the influence, no doubt, of an irresistible conviction, that the Legislature could not possibly have intended what its words signify, and that the modifications thus made are mere corrections of careless language, and really give the true intention. The ascertainment of the latter is the cardinal rule, or rather the end and object, of all construction, and where the real design of the legislature in ordaining a statute, although it be not precisely expressed, is yet plainly perceivable, or ascertained with reasonable certainty, the language

of the statute must be given such a construction as will carry that design into effect, even though in so doing the exact letter of the law be sacrificed, or though the construction be, indeed, contrary to the letter." We have unhesitatingly adopted and applied it in situations requiring it. Some of the cases in which it was done are: James, Auditor, v. United States Fidelity & Guaranty Co., 133 Ky. 299, 117 S. W. 406; Nichols v. Logan, 184 Ky. 711, 213 S. W. 181; Moore v. Polsgrove, 219 Ky. 410, 293 S. W. 965, and cases referred to in those opinions together with a number of others following the last one.

Pursuant to the authority conferred by that well-established rule, and as a part of it, it is well settled that: "When, and only when, necessary to effectuate the obvious intention of the legislature conjunctive words may be construed as disjunctive and vice versa." 59 C. J. 986, sec. 584. The domestic James and Moore Cases, supra, are cited in support of that text, together with a long list of others from other jurisdictions. See also Englich supra, section 303. Following that subsidiary rule as a part of the general one supra (and which if necessary to carry out the evident intention and purpose of the legislature is fully authorized), we feel justified in substituting the conjunctive "and" for the disjunctive "or" in the third line from the bottom of section 1083a-9, so as to make the proviso read, "that in no event shall the amount paid to any constable or deputy constable for any month exceed the amount paid into the general fund of said county by the constable *and* deputy constable, pursuant to section [2] hereof during the preceding month." The reported earned fund by both the constable and deputy constable or constables would then be a unit from which each of them might receive their monthly compensation; provided the entire sum was sufficient for that purpose, and which, according to our firm conclusion, was the intention and purpose of the Legislature.

Besides, considering the language of the entire act —plus the evil intended to be remedied—we have the right in arriving at that conclusion to consider and weigh the results, if a contrary interpretation should be adopted. In that event the chief constable, who is made responsible under the law for all the acts of his deputies, and also for the general conduct and regularity of

his office, would have imposed upon him the duty of employing greater activity in executing the duties of his office than would be imposed upon any deputy, since he in person would be compelled to earn his monthly salary of $200, whilst his deputy would be required to earn only 25 per cent. more than one-half that amount ($125). Not only would such extra labor be imposed upon him, whilst perhaps his deputy might be idle, but his time would likewise be additionally burdened with directing and supervising the proper management and conduct of his office, and keeping necessary records, and directing those engaged under him. Surely the Legislature never contemplated that absurd result.

If it should be said that the interpretation which we have approved might result in the appointment of a greater number of constables than necessary in assisting the constable in performing the duties of his office, the answer is that the surmise is at its inception founded upon the supposition that the constable will violate his oath of office. In addition thereto, that the county judge will likewise violate his oath of office in consenting to the appointment of more deputy constables than are necessary to perform the duties of the office. It may be true that in some directions and in some instances, the performance of official duties and the observances of official oaths might rest lightly upon the conscience of the immediate encumbent, but courts should not act upon the theory that selfish motives or violations of official oaths will be employed to bring about such derelictions. The law is administered upon the theory that such encumbent in office will conscientiously perform his duties and obey his oath of office. Moreover, such a violent presumption upon which the surmise referred to is based, would likewise prevail as we have said as to the county judge who consents to the number of deputy constables that may be appointed. The same argument might be made with equal plausibility with reference to deputy sheriffs, whose salaries may be taken from the total earnings of the sheriff's office before the constitutional salary of the chief sheriff may be reduced to the constitutional limit of $5,000, and which has been so declared by us in numerous cases.

The interpretation we have adopted dispenses with the necessity of discussing or determining other questions argued in briefs of counsel, since the acts of do-

fendant that are relied on to establish his guilt were not perpetrated by him for the accomplishment of any unlawful or selfish purpose, but only to conform to an erroneous interpretation of the statute then entertained and insisted on by the fiscal court and its advisors, when the result sought to be accomplished by defendant was, according to our conception of the true interpretation of the statute, the correct one. The misrepresentation conveyed by the returns made by the deputy constables, showing actual service by the constable instead of by themselves, was an immaterial one and in the circumstances involves no corrupt motive or guilty element. It therefore follows that the facts shown by the testimony do not sustain the alleged misfeasance charged in the indictment, and the court properly directed defendant's acquittal.

Wherefore, the judgment is affirmed.

The whole court sitting.