**STATE of Texas, Appellant,**

v.

**Robert Lewis MEYERS (1953 Lincoln Automobile), Appellee.**

**No. 15522.**

Court of Civil Appeals of Texas.

Dallas.

July 24, 1959.

Rehearing Denied Oct. 30, 1959.

**322**

———◆———

Henry Wade, Dist. Atty. and John J. Orvis, Asst. Dist. Atty., Dallas, for appellant.

Templeton & Gauen, Dallas, for appellee.

YOUNG, Justice.

This is a civil suit for the forfeiture of the subject automobile under authority of Art. 725d, Vernon's Annotated Penal Code of Texas; said vehicle allegedly being used for possession and transportation of contraband narcotics as prohibited by Art. 726c. Upon trial to the court and denial of forfeiture, ordering the car returned to its owner; the State of Texas on relation of the Dallas County District Attorney, has duly perfected an appeal. No Statement of Facts was filed; the record, aside from exhibits, consisting merely of the court's Findings of Fact and Conclusions of Law.

These findings and conclusions present a full history of the proceedings, factual and otherwise, and will next be quoted: *"Findings of Fact.* 1. That Robert Lewis Meyers is the owner of a 1953 Lincoln automobile, Motor No. 53WA16864–H, bearing Texas License plates M/F 1982 and there are no existing liens against such vehicle. 2. That Robert Lewis Meyers

has filed a verified answer denying the use of said Lincoln automobile in violation of Article 725c Penal Code. 3. That the State proved up a prima-facie case of Robert Lewis Meyers having in his 1953 Lincoln automobile at the time and on the occasion in question certain unlabeled drugs of a contraband nature, to-wit: amphetamine sulfite tablets and nembutal tablets. 4. That said drugs in possession of Robert Lewis Meyers had been prescribed for him by physicians for his sinus condition. 5. That Robert Lewis Meyers had taken the drugs from their original containers and put them in unlabeled bottles for convenience in carrying them. 6. The testimony offered by Dr. Mason and Dr. Seale was, *and I so find,* that said drugs would ordinarily be prescribed for a person suffering from sinusitis and that it would be normal and usual to prescribe said drugs together. 7. That Robert Lewis Meyers has been suffering from sinusitis and needed said drugs for the treatment of his physical ailment at the time and on the occasion in question. 8. That Robert Lewis Meyers was not using said Lincoln automobile to transport any contraband narcotic illegally. 9. That Robert Lewis Meyers was not using said Lincoln automobile to conceal or possess a contraband narcotic. 10. That Robert Lewis Meyers was not using said Lincoln automobile to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange or gift of any contraband narcotic. 11. That Robert Lewis Meyers had said drugs legally for his own use in the treatment of his sinusitis. *Conclusions of Law.* The court finds that the testimony of the doctors coupled with the testimony of Robert Lewis Meyers that he needed said drugs and was suffering from a condition necessitating the use of said drugs coupled with the testimony that there had been prescriptions issued to him for said drugs overcame any prima-facie showing made by the State that said drugs were possessed illegally; and the court further finds that the possession of said drugs at

the time and on the occasion in question was legal and that the testimony offered by the State was not sufficient to prove to the satisfaction of the court that said drugs were possessed illegally beyond a reasonable doubt as required by Article 725d, Section .6, Penal Code. * * * *Additional Findings of Fact.* In response to the request of the plaintiff in the above entitled cause for additional findings of fact and conclusions of law therein, I find: I. That the automobile involved herein, to-wit: said 1953 Lincoln automobile did transport and possess barbiturates and Amphetamine drugs on the 18th day of April 1958, in Dallas County, Texas as alleged in Plaintiff's First Amended Petition. II. That 91 amphetamine tablets known as benzedrine were found in a bottle identified as State's exhibit number 1 and that 60 whole and two partial amphetamine tablets known as benzedrine were found in a bottle further identified as State's exhibit number 2, and that both of said bottles were found in said 1953 Lincoln automobile on April 18, 1958. III. That 94 barbiturate tablets known as Nembutal were in a bottle further identified as State's exhibit number 3 found in said 1953 Lincoln automobile on April 18, 1958. 1V. That the said three bottles containing said amphetamine tablets and barbiturates tablets identified as State's exhibits numbered one, two and three did not bear any prescription label as required by section 3, sub-section a–1, article 726–c of Vernon's Annotated Texas Penal Code. V. That said amphetamine and barbiturate tablets contained in said three bottles identified as State's exhibits numbered one, two and three without prescription labels thereon were possessed by Robert Lewis Meyers on April 18, 1958. VI. That said Robert Lewis Meyers was the owner and driver of the said 1953 Lincoln automobile involved herein. VII. That amphetamine and barbiturate drugs are narcotic drugs for purposes of this act as set out in subsection c, in section 1 of article 725–d, Vernon's Annotated Texas Penal Code. VIII. That Dr. Mason, testified that bar-biturate and amphetamine drugs as contained in State's exhibits numbered one, two and three were habit forming drugs. IX. That Robert Lewis Meyers, while driving said 1953 Lincoln Automobile on April 18, 1958, was legally arrested by police officer B. J. Stiff for making an illegal left turn at the intersection of Young and Record Streets in the City of Dallas, Dallas County, Texas. X. That Robert Lewis Meyers, the driver and owner of said 1953 Lincoln automobile was legally arrested at the time of seizure of said 1953 Lincoln automobile on April 18, 1958, for the offense of Unlawfully Carrying a Gun."

Relevant parts of Art. 725d (1955 Acts of 54th Legislature) provide: Section 1. "It shall be unlawful within this State: (a) To transport, carry or convey any contraband narcotic in, upon or by means of any vessel, vehicle or aircraft or any occupants thereof; (b) To conceal or possess any contraband narcotics in or upon any vessel, vehicle or aircraft or occupants thereof; (c) To use any vessel, vehicle or aircraft or occupants thereof to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange or gift of any contraband narcotic. For purposes of this Act, 'any contraband narcotic' shall mean any narcotic or drug, the use, manufacture, possession, control, sale, prescription, administering, dispensing or compounding of which is made illegal by the provisions of Acts of 1937, Chapter 169 as last amended by Acts of 1953, Chapter 328, compiled as Article 725b of the Penal Code; or of Acts of 1953, Chapter 237, compiled as Article 725c of the Penal Code; or of Acts of 1949, Chapter 490, compiled as Article 726b of the Penal Code; or of Acts 1951, Chapter 413, compiled as Article 726c of the Penal Code; or of any subsequently enacted law defining or prescribing illegal activities with narcotics or drugs. "Sec. 2. Any vessel, vehicle or aircraft which is being used in violation of Section 1 of this Act shall be seized and forfeited to the Texas Department of Public Safety.

Narcotics Section, under the provisions of this Act; provided, no vessel, vehicle or aircraft used by a common carrier in such business shall be forfeited unless it be shown that the owner, master, pilot, conductor, driver, operator or other person in charge thereof was at the time of the alleged illegal act a consenting party or privity thereto; and provided further, no vessel, vehicle or aircraft shall be forfeited where it is shown that the illegal act has been committed by some person other than the owner thereof while such vessel, vehicle or aircraft was in the possession of any person who acquired or retained such possession in violation of any law of this State or of the United States."

Further sections relate to enforcement of the Act, notice, etc., pursuant to Texas Rules of Civil Procedure; Sec. 6, styled "Hearing" being quoted in full: "If it shall appear that the owner of the vessel, vehicle or aircraft has filed a verified answer denying the use of such vessel, vehicle or aircraft in violation of this Act, then the burden shall rest upon the State, represented by the District Attorney to prove as in other penal cases, the violation of the provisions of this Act. Provided, however, that in the event no answer has been filed by the owner of said vessel, vehicle or aircraft, the notice of seizure may be introduced into evidence and shall be prima facie evidence of said violation."

Art. 726c in part provides: "Sec. 2. For the purposes of this Act: (a) The term 'barbiturate' means the salts and derivatives of barbituric acid, also known as malonyl urea, having hypnotic or somnifacient action, and compounds, preparations and mixtures thereof. * * * Sec. 3. The following acts, the failure to act as hereinafter set forth, and the causing of any such act or failure are hereby declared unlawful except as provided in Section 4: (a) The delivery of any barbiturate unless: (1) Such barbiturate is delivered by a pharmacist, upon an original prescription, and there is affixed to the immediate container in which such drug is delivered a label bear-

ing (A) the name and address of the owner of the establishment from which such drug was delivered; (B) the date on which the prescription for such drug was filled; (C) the number of such prescription as filed in the prescription files of the pharmacist who filled such prescription; (D) the name of the practitioner who prescribed such drug; (E) the name and address of the patient, and if such drug was prescribed for an animal, a statement showing the species of the animal; and (F) the directions for use of the drug as contained in the prescription; or (2) Such barbiturate is delivered by a practitioner in the course of his practice and the immediate container in which such drug is delivered bears a label on which appear the directions for use of such drug, the name and address of such practitioner, and the name and address of the patient, and, if such drug is prescribed for an animal, a statement showing the species of the animal. Acts 1951, 52nd Leg., p. 758, ch. 413. (b) The refilling of any prescription for a barbiturate, unless and as designated on the prescription by the practitioner, or through authorization by the practitioner at the time of refilling. As amended Acts 1955, 54th Leg., p. 1215, ch. 486, § 3. * * * (e) The possession of a barbiturate by any person unless such person obtained the drug under the specific provision of Section 3a(1) and (2) of this Act and possesses the drug in the container in which it was delivered to him by the pharmacist or practitioner selling or dispensing the same; and any other possession of a barbiturate shall be prima facie evidence of illegal possession. Acts 1951, 52nd Leg., p. 758, ch. 413."

Points of appeal assert error (1) in the trial court's rendition of judgment not based upon and in conflict with his findings of fact; (2) the findings of fact as made by the trial court was a manifest abuse of discretion; (3) the court's consideration of defendant's illness is not an issue in this, a statutory proceeding. Appellee's answering counterpoints take the opposite view; in effect, that a correct and legal judgment was

rendered, based upon findings of fact as made by the court. Otherwise stated it is the position of appellee that while a prima facie case was presented by the State under Art. 726c, § 3(e); yet upon trial of the cause for forfeiture "as in other penal cases", the drugs in question were not proven to be contraband narcotics beyond a reasonable doubt as required by Art. 725b, § 6, Penal Code.

On the other hand, appellant contends that undisputedly the 91 amphetamine tablets known as Benzedrine in one bottle; the 60 whole and two partial tablets of the same in another; and in a third bottle 94 barbiturate tablets known as Nembutal were possessed and transported in the Lincoln automobile on said April 18, 1958; that said tablets were narcotic drugs as defined in Art. 725d, Sec. 1, Penal Code; the three bottles bearing no prescription labels as required by law; and such findings constituted proof, not only prima facie, but conclusively warranting a forfeiture of the seized automobile.

■ Our Supreme Court has held, construing above Penal Statutes, in State v. Richards, 157 Tex. 166, 301 S.W.2d 597, that forfeiture of property of even innocent owners is a method deemed necessary by the Legislature in restraint of the prohibited transactions and in aid of their prevention. In 37 C.J.S. Forfeitures §§ 1 through 5, pp. 5–19 are found cases from other jurisdictions construing laws similar to Art. 725d, and 726c, Penal Code from which the following general rules derive, applicable here: (1) that such statutory proceeding for forfeiture is one in rem, not against the owner but against the property itself; (2) the suit does not involve conviction of the owner or operator of the vehicle seized and is therefore a proceeding of a civil nature; and (3) the question to be determined by court or jury being "was the act condemned by the Statute committed."

■ Art. 726c establishes the legal means whereby narcotic drugs such as barbiturates and amphetamine drugs may be handled and possessed; the Court of Criminal Appeals, Mays v. State, 304 S.W.2d 118, 120, holding in such connection: "Under the provisions of Sec. 3. (a, e) of Art. 726c, supra, the possession of a barbiturate by any person, unless the same is obtained from a pharmacist upon an original prescription or delivered by a practitioner and in the original containers provided by subsections (1) and (2), § 3(a) of the act, is unlawful."

■ In its original findings the trial court has set forth facts comprehending a legal possession of these drugs by Meyers the owner. Even so, his removal of the prescription labels effectuated a change of their status to that of contraband narcotics, the vehicle carrying same becoming subject to forfeiture.

■ The trial court in its conclusions of law found that Meyers needed the drugs in question and was suffering from a condition that necessitated the use thereof; being a circumstance (along with other testimony) sufficient to overcome the prima facie case made, that said drugs were illegally possessed. Art. 726c, V.A.P.C. contains no exceptions that excuses or exempts the possession of any barbiturate drug in containers without the proper prescription label thereon; Ex parte Engel, 158 Tex.Cr. R. 95, 253 S.W.2d 430; Mays v. State, supra. Appellant therefore correctly states as point three that "The need of contraband or prohibited drugs are not an issue in a proceeding in rem for a forfeiture as an exception to Art. 725(d) V.A.P.C."

The cause is reversed and judgment for appellee set aside. Judgment of forfeiture in favor of appellant is here ordered and rendered, pursuant to applicable provisions of Art. 725d Vernon's Annotated Penal Code.

Reversed and rendered.