The STATE of Utah, Plaintiff
and Appellant,

v.

ONE (1) PORSCHE 2–DOOR, I.D. NO.
911211026, TITLE NO. PP10026F BEAR-
ING KANSAS LICENSE PLATE NO.
JOR 1652, Defendant and Respondent.

No. 13495.

Supreme Court of Utah.

Sept. 18, 1974.

Vernon B. Rommey, Atty. Gen., M. Reid Russell, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellant.

Gerald H. Kinghorn, Salt Lake City, for defendant and respondent.

HENRIOD, Justice:

One Price, owner of a Porsche automobile, valued at $10,000, was stopped and arrested for speeding, *possession* of a controlled substance and driving while under the influence of alcohol. He was charged with possession. There is nothing in the record to indicate what disposition was made of that charge.

Nonetheless, after the arrest and apparently before the charge was filed, the car was turned over to the State for forfeiture.

The section of the statute under which this forfeiture was accomplished, Title 58–37–13(1)(e), Utah Code Annotated 1953, either is invalid or inapplicable under the facts of this case for the following reasons:

The section mentioned reads as follows:

(e) All conveyances including aircraft, vehicles or vessels used or intended for use, to transport, or in any manner facilitate the transportation, sale, receipt, possession, or concealment of property

described in (1)(a) or (1)(b) of this section, except that:

. . . . . .

(iii) Any forfeiture of a conveyance subject to a bona fide security interest shall be subject to the interest of the secured party upon the party's showing he could not have known in the exercise of reasonable diligence that a violation would take place in the use of the conveyance.

I. The section, as applied to this case leads to an unusually harsh result, constitutes an additional fine or penalty in connection with a misdemeanor—that of *possession* of marijuana. It is conceded that basis of the charge is that one ounce of marijuana was being carried by Price, who was a university student in Lawrence, Kansas. But it is *undisputed* that *his sole purpose* for being in Utah was to visit the Arches National Monument,—*not* to transport a controlled substance. It appears that the thrust of the section mentioned above is to *deter* the *transportation* of a controlled substance from one place to another and has nothing to do with a situation where the controlled substance,—*one ounce* of marijuana in this case,—simply in a car but *possessed* by a person *incident to* a vacation and only incident and collateral to *transportation* and obviously for personal consumption, is involved. It seems unthinkable that one would package up an ounce of marijuana for the primary purpose of transporting it five hundred to a thousand miles for sale, receipt, possession or concealment.

This whole case leads to an unconscionable forfeiture, and that the trial court was correct in concluding that the enormity of the forfeiture hardly could fit the $299 misdemeanor.

That forfeitures are frowned upon needs citation of but few authorities since the cases supporting such an elementary principle are legion. In Moran v. Knights of Columbus,[1] our court had this to say as to forfeitures:

It matters not . . . whether the action is one in equity or one at law; the rules of equity . . . must prevail.[2]

It is no answer for appellant to urge that the court's interpretation of the statute was erroneous,—if the decision of the court is supported by good and sufficient reason or reasons.[3]

II. The statute must be examined in the light of its purpose and/or intent of the legislature.

In State Land Board v. State Department of Fish and Game,[4] we said:

. . . with respect to the meaning of statutes, it is appropriate to look to the intended purpose and to the means of accomplishing it by the proper application of the language used.

■ It appears obvious that the *primary* and *sole purpose* of the statute *and the intent of the legislature* were directed exclu-

---

1. 46 Utah 397, 151 P. 353 (1915); Morgan v. Sorenson, 3 Utah 2d 428, 286 P.2d 229 (1955); Schlegel v. Hough, 182 Or. 441, 186 P.2d 516, 188 P.2d 158 (1947); Miller v. Stuart, 69 Utah 250, 253 P. 900 (1927).

2. Title 68–3–2, Utah Code Annotated 1953, seems to be apropos under the facts of this case. See also: Spoon-Shackett v. County of Oakland, 356 Mich. 151, 97 N.W.2d 25 (1959); State v. Hunt, 13 Utah 2d 32, 368 P.2d 261 (1962); Stanton v. Davis, 9 Utah 2d 184, 341 P.2d 207 (1959).

3. "The decision of the trial court should be affirmed if it is correct, although . . . (it) . . . relied upon a wrong ground or gave a wrong reason." 5 Am.Jur.2d, Sec.

785, p. 227. See also: Tree v. White, 110 Utah 233, 171 P.2d 398 (1946); Hague v. Nephi Irr. Co., 16 Utah 421, 52 P. 765; Piper v. Eakle, 78 Utah 342, 2 P.2d 909 (1931); Harris v. Butler, 91 Utah 11, 63 P.2d 286 (1936); Limb v. Fed. Milk Prod. Ass'n, 23 Utah 2d 222, 461 P.2d 290 (1969); In Re Love's Estate, 75 Utah 342, 285 P. 299 (1930); Thomas v. Foulger, 71 Utah 274, 264 P. 975 (1928).

4. 17 Utah 2d 237, 408 P.2d 707 (1965). See also: Andrus v. Allred, 17 Utah 2d 106, 404 P.2d 972 (1965); Snyder v. Clune, 15 Utah 2d 254, 390 P.2d 915 (1964); Young v. Barney, 20 Utah 2d 108, 433 P.2d 846 (1967).

sively toward the *transportation* of a controlled substance for distribution according to erstwhile law merchant principles, and not for personal possession and consumption.

Let's look at the statute which points strictly to *transportation,* not mere possession. It says: "All *conveyances* [connoting *transportation*] including aircraft, vehicles or vessels [connoting *transportation*] used or intended for use, to *transport* [connoting *transportation*], or in any manner *facilitate* the *transportation,* sale, receipt, possession, or concealment of property . . . except . . . " are forfeitable. [Emphasis added.]

 The statute's theme song has lyrics that require the sheet music to be prefaced by a title such as *"Transportation."* It seems that the word "possession" mentioned in the section obviously must have an·end result from asportation, the gravamen of the legislation, as does the word "concealment." Grammatically, hardly could it be said that knowingly · "possession" of an ounce of marijuana by the Captain on the deck of "Old Ironsides," in Boston Harbor, would subject that vessel to forfeiture if the venerable warrior were dry-docked there or in a harbor operated by a ship museum buff at Great Salt Lake. The statute is *transportation* to *accomplish* possession, not simply transportation "with" possession,—where the obvious purpose of the statute is an interdiction against transportation for the accomplishment of distribution through pushers, pimps or pirates,—not to accomplish a forfeiture because one has a marijuana cigarette in his pocket or mouth, headed for Disneyland,—or Arches National Monu-

ment. The Title in Chapter 145, page 475, Laws of Utah 1971, seems to bear me out on this conclusion, as do the authorities. In Masich v. U. S. Smelting [5] we said:

> One of the cardinal principles of statutory construction is that the courts will look to the reason, spirit, and sense of the legislation, as indicated by the entire context and subject matter of the statute dealing with the subject.[6]

III. The statute obviously can lead to the most absurd results,—a reason this court consistently has pointed up as a valid reason for invalidation of a statute, or a refusal to apply it under particular facts making such application ridiculous.[7] This case is such a case, and it is suggested that possession of an ounce of marijuana, the purpose of which is personal consumption, —with incidental transportation for such purpose,—is not trafficking in dope, which is the evil that the statute obviously is designed to eliminate. Under the legislation, Price would have to forfeit his $10,000 Porsche if he happened to be sitting in it in his driveway in silence and serenity, smoking a marijuana cigarette, and was approached by a gendarme, who took his car out from under him. Under this statute he could have his car taken from him if he were taking his six-year old to school and happened to have a marijuana cigarette in his pocket,—or under such circumstances he was rushing his pregnant wife to the hospital,—or if he were driving the Porsche out of a burning garage,—or trying to escape from a highwayman or a flood or anything else. All of these, if bases for forfeiture, in my opinion would give birth to a very serious constitutional question as to the statute's application

5. 113 Utah 101, 191 P.2d 612 (1948).

6. State v. Salt Lake City Bd. of Ed., 13 Utah 2d 56, 368 P.2d 468 (1962) ; Crist v. Bishop, Utah, 520 P.2d 196 (1974) ; Parker v. Rampton, 28 Utah 2d 36, 497 P.2d 848 (1972) ; Howe v. Jackson, 18 Utah 2d 269, 421 P.2d 159 (1966).

7. Johanson v. Cudahy, 107 Utah 114, 152 P. 2d 98 (1944), where we said: " . . . we are cognizant of the fact that we are not

following the literal wording of the statute, but such is not required when to do so would defeat legislative intent and make the statute absurd. In this regard see Robinson v. Union Pacific R. Co., 70 Utah 441, 261 P. 9; Brackett v. Chamberlain, 115 Me. 335, 98 A. 933; Nichols v. Logan, 184 Ky. 711, 213 S.W. 181." Masich v. U. S. Smelting, supra, footnote 5; Rowley v. Pub. Serv. Comm., 112 Utah 116, 186 P.2d 514 (1947).

being offensive to the due process clause or equal protection clause.

IV. The exception to the statute devours it. Section 13(1)(e), Chapter 145, Laws of Utah 1971 (Title 58–37–13(1)(e) Utah Code Annotated 1953), has three sub-subsections: (i) excepts common carriers, (ii) owner having no knowledge of contraband in his "conveyance," and (iii) excepts from forfeiture any such "conveyance" where the owner has a security interest in it, and did not know of any unlawful use thereof. This section might be dubbed the "finance" or "bank" or "loan shark" section. This is the section that makes the statute silly and amounts to inverse discrimination,—a discrimination in favor of a "mortgagee." Such a mortgagee and the conveyance are protected. It seems that if Price had borrowed a bona fide $8,000 from a bank or finance company, the Porsche would not have been subject to forfeiture, Price could have retained possession, gone to Arches National Monument, smoked marijuana all the way, returned to Lawrence, Kansas, gone back to school, unfettered, in his Porsche, and paid off the loan at his leisure or according to the terms of his loan. If he were driving a leased car, as thousands of people do these days rather than to buy one, such conveyance could not be forfeited under this statute. Neither would it be so subject if he rented a car from Hertz, or Avis, or U-Haul. Neither would it be subject to forfeiture if he borrowed the car from his brother or wife, or if he stole it, or temporarily converted it, or sold it the day he left Lawrence in exchange for a promissory note, with permission to drive to Utah.

The most that can be said for this statute's efficacy or practical worth, much less its validity, was said in 1967, when the California legislature repealed its legislation on forfeiture of vehicles used in violation of narcotics laws. In California Statutes 1967, Chapter 280, Section 1, page 1437, "Urgency," the legislature had this to say:

The Commission on California State Government Organization and Economy, in a report dated December 12, 1966, stated that the people of this state will save at least six hundred thousand dollars ($600,000) each year if the motor vehicle forfeiture provisions of the Health and Safety Code are abolished. The report further stated that such provisions have had *No Deterrent Effect.* In order to immediately effectuate the annual savings to the state of such a great sum of money, and in order to enable numerous personnel of the Bureau of Narcotic Enforcement to redirect their efforts toward the enforcement of laws which have real influence as deterrents to illegal narcotic activities, it is necessary that this act go into immediate effect.

The moral of this story if this case should be reversed would be interesting mostly and primarily to the pusher, and to him who makes a business of trafficking in and transporting contraband. It then would be simple: If you buy a car in which you want to transport marijuana (or consume an ounce yourself on the way to the Arches), make sure the bank or loan company has your note and chattel mortgage, or just borrow a car, or lease one, or rent one, and you will have transportation throughout Utah free and clear of forfeiture and without any concern whatever that you will be prohibited either from owning or driving it.

The trial court's judgment should be and is sustained.

CALLISTER, C. J., and TUCKETT, J., concur.

CROCKETT, Justice (dissenting).

It is indisputably clear from the evidence that Donald Price, the owner of this Porsche sedan, was knowingly transporting in it considerable quantities of illicit drugs: marijuana and amphetamine pills; and that they were discovered and seized in connection with his lawful arrest. The Highway Patrol officers had followed this

car, clocking its speed at 95 to 100 miles per hour. The arresting officer, William Pectol, testified that at the time of the arrest he observed in the car in an open sack plastic bags containing what appeared to be marijuana; and also observed different kinds of pills.

The amounts of these substances is not expressly stated. But it is clear that the one ounce of marijuana which was tested had no relationship whatsoever to the total quantities of illicit drugs found in the car. Informative on this point are certain excerpts from the record. Officer Pectol said that after he had informed Mr. Price that he was under arrest and "read him his rights from the card":

Q. What did you do then?

A. I laid all the stuff containing contents of the sack on the hood of the patrol car and asked him if he could identify it and asked him if the other two passengers knew what was in the vehicle. And he stated no, *that the marijuana was his,* and *I asked him if he could identify the pills and he said they are amphetamines.*

Q. Now from that tell me what you did in getting the samples?

A. We dumped *all of the contents* on the desk in the patrol office. Took a sample of marijuana and placed it in a plastic bag and taped it up, placed it inside of the yellow envelope. Wrote on the sample 1, my case number and what the sample was containing. Sealed that envelope, taped it and initialed it, and we did this to each of the different colored pills.

Q. That was sent in to the state toxicologist?

A. Yes.

Also pertinent to this point is a statement of the trial court with reference to the proffered evidence. In speaking of the officer's testimony he stated in part:

. . . he testified that there were *a number of plastic bags* and I just can't

assume that what is in that bag is marijuana . . . .

\* \* \* \* \* \*

. . . . I mean *I can infer* from what you said *I can make a reasonable inference,* but I don't think it is established to the point that I can receive it in evidence as marijuana. Without having been tested. When all he says is he suspects that it is. He took out some and they say that was marijuana, but I don't feel warranted in making an assumption to the point where I will admit it in evidence as marijuana upon merely his suspicion. I think I have got all of the mileage you can get out of it when he (Officer Pectol) says he *took some out and proved to be marijuana and here is the report that is in evidence.*

Q. As I recall, there were two plastic bags?

A. Yes, I believe there were two.

Concerning the matter of forfeiture in his memorandum decision the trial court referred to the car as being of great value, $10,000 which he regarded as greatly disproportionate to the penalty for the crime. (The main opinion speaks of a fine of $299. But there is also the more important penalty of up to six months in jail.) Moreover, it is to be noted that Section 58–37–8, U.C.A.1953, which provides for the penalties for the possession of marijuana, further provides in subsection 58–37–8(8):

*Any penalty* imposed for violation of this section *shall be in addition to,* and not in lieu of, any·civil or administrative penalty or sanction authorized by law.

The important proposition to be noted on this appeal is that the only reason given by the trial court for his refusal to declare the forfeiture of the automobile was that he thought that its value (the only evidence concerning value was Price's statement that he had paid $10,000 for it) was so disproportionate to the penalty for the offense of possession of marijuana that the forfeiture should not be enforced. In that

connection he stated: "This court does not believe that the legislature intended such a harsh and drastic result," i. e., the forfeiture.

The proposition stated by the trial judge gives rise to two thoughts:

First, that the judge just couldn't believe the legislature meant what is so clearly said in the statutes.

Second, that if a person is caught transporting drugs in an old beat-up inexpensive car, it is subject to forfeiture. But if he is more prosperous in his traffic, and has a fine new expensive car, the law should not deign to forfeit it.

The trial judge was patently right when he said "I can make a reasonable inference." That is, that the rest of the substance was also marijuana. It is totally inconceivable to me that the officer could pick up one ounce of substance, all of which had the same appearance, which would turn out to be marijuana, and the rest of it be something else. I therefore say with complete assurance that the *only* reasonable inference was that the entire quantity was marijuana. I add, however, that the issue of forfeiture under the statute, depends only upon the identification of some substantial and identifiable amount of marijuana, and not upon any particular quantity thereof.

It is to be remembered that the forfeiture of property declared by law is not the same as imposing a sentence for a crime, with respect to which the trial court does have some discretion in modifying or suspending the sentence.[1] The declaration of forfeiture of property under circumstances so justifying is the mandate of the people, speaking through their legislature. When such a mandate is expressed in clear and unambiguous terms, it is the duty of the court to abide thereby and carry out its mandate, thus avoiding judicial intrusions into the legislative prerogative.[2]

The principle of forfeiture of the means of transportation as a method of law enforcement and control of illicit traffic in contraband was discussed and reviewed by the United States Supreme Court in the recent case of Calero-Toledo v. Pearson Yacht Leasing Co.[3] That principle was reaffirmed in a situation greatly more exaggerated than the instant one. After officers had discovered marijuana aboard, the yacht was seized and forfeited pursuant to Puerto Rican statutes.[4] The Supreme Court rejected the attack upon the procedure and the statutes; and particularly rejected the contention of deprivation of property without due process of law under the Fourteenth Amendment. It is noteworthy that our Utah statute is more fair than the one under attack in the Calero-Toledo case, in that under our statute the owner is given the opportunity to show his innocence and his interest will be protected.

With respect to the California experience referred to in the main opinion, this should be noted: their statute was not de-

1. As to the grant of general power to the courts to suspend sentences or grant probation in criminal cases see Sec. 77–35–17, U.C.A.1953.

2. Cases sustaining the principle of forfeiture as a means of law enforcement are numerous. E. g., for similar cases of forfeiture see Associated Investment Company v. United States, 220 F.2d 885 (5th Cir. 1955), two smoked marijuana cigarettes in the vehicle resulted in forfeiture; General Finance Corporation of Florida South v. United States, 333 F.2d 681 (5th Cir. 1964); State v. Meyers, 328 S.W.2d 321 (Tex.Civ.App.1959); Carmichael Finance Company v. State, 475 S.W.2d 312 (Tex.Civ.App.1971); Prince George's County v. One (1) 1969 Opel, et al., 267 Md. 491, 298 A.2d 168; State v. One 1967 Ford Mustang, 266 Md. 275, 292 A.2d 64. See discussion in the latter case wherein the Maryland Court of Appeals said, inter alia, that the refusal to declare the forfeiture would be comparable to refusal to enter a large judgment against a debtor because it would place a great burden upon the defendant.

3. 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).

4. Puerto Rico Laws Ann. Tit. 24, Section 2512(a)(4), which has the same wording of the present Utah Statute, Section 58–37–13 (1)(e), U.S.C.A.1953, but has less exemptions.

clared unconstitutional. It was repealed by their legislature,[5] after a study by the Commission on State Government, and apparently largely because of economic considerations. I appreciate that the reason is quite immaterial here. But the experience itself is in conformity with the idea herein advocated: that whatever the problem may be, it should be dealt with legislatively rather than judicially.

In accordance with what I have said above, it is my judgment that the order of forfeiture should be entered as prescribed by law. (All emphasis added.)

ELLETT, J., concurs in the dissenting opinion of CROCKETT, J.

5. California Statutes 1967, Ch. 280, Sec. 3, p. 1438.